## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARCELLUS FRENCH, M21081,** | ) | |
| **ALLEN FORD, Y24630,** | ) | |
| **NICHOLAS AYALA, M42926,** | ) | |
| **CHAPPEL CRAIGEN, M25917,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-cv-1462-DWD** |
| | ) | |
| **ANTHONY WILLS,** | ) | |
| **STERRETT,** | ) | |
| **JOHN DOES 1-3,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on the Complaint filed jointly by Marcellus French, Allen Ford, and Chappel Craigen,[1] all inmates of the Illinois Department of Corrections (IDOC) who currently reside at Menard Correctional Center (Menard).  The Plaintiffs allege that since September of 2023 they have experienced hinderances with their ability to observe their religion at Menard.  They seek injunctive relief and monetary compensation.

On July 16, 2024, the Court entered a *Boriboune*[2] Order  (Doc. 24) to inform Plaintiffs of the risks and benefits of proceeding together with group litigation.  Each

---

[1] A fourth Plaintiff, Nicholas Ayala, was initially named as a co-plaintiff.  He will be discussed further in this Order.  As of yet, he has not submitted a signed complaint.

[2] *See Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004) (instructing district courts to warn individuals involved in multi-plaintiff litigation of the pros and cons of proceeding together in a single action and allow them an early opportunity to opt out of group litigation).

Plaintiff was required to advise the Court in writing on or before August 5, 2024, whether he wanted to continue as a plaintiff in this group action. (*Id.*). The deadline was then extended to August 27, 2024. (Doc. 32). Plaintiffs were warned that anyone who simply failed to respond would be dismissed from this action for want of prosecution.

Plaintiff French signed the initial complaint (Doc. 1), so he did not need to submit an additional document to proceed. Plaintiffs Ford (Doc. 33) and Craigen (Doc. 36) both filed timely signed copies of the complaint expressing their desire to proceed. Ford and Craigen shall remain as named Plaintiffs in this action, and they will each be assessed a filing fee.

Plaintiff Nicholas Ayala initially sent a letter on June 27, 2024, stating that he wanted to proceed with the lawsuit. This later came before the Court's *Boriboune* Order. After the *Boriboune* Order, Ayala sent a second piece of correspondence on July 28, 2024, (Doc. 28) asking for a copy of the complaint because he had received the Court's *Boriboune* Order and wished to review the complaint before deciding if he wanted to proceed. Since that time, Ayala has not transmitted any additional material to the Court. The Court takes this as an indication that Ayala does **NOT** wish to proceed, so he will be dismissed without prejudice. This will mean that if Ayala wishes to pursue his claims in the future, he will be free to do so.

The Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for

relief, or seeks money damages from a defendant who is immune from relief.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations in the pro se Complaint are liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Although the Complaint is 44 pages, and is accompanied by about 100 pages of exhibits, it can be distilled very simply.  Plaintiffs Ford, Craigen, and French all reside in the East cellhouse at Menard.  Their lawsuit is about their ability to observe their religion, Al-Islam, from September 2023 through the filing of this lawsuit in July of 2024.  They identify two key components of their religious practice that they have been unable to observe—Friday Jumu'ah services and weekly Taleem (educational) services.  They indicate that during the relevant time, they were allowed to attend Jumu'ah just once, and they have not been allowed to attend Taleem at all.  They also complaint that Taleem is theoretically scheduled at the same time as law library, which would force them to choose between religion or law library if Taleem was not always cancelled.

Plaintiffs acknowledge the common test for restrictions on religion—the *Turner* test.  *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  They argue the limits on their religious observance are not reasonably related to a penological objective because other movement is allowed in the facility for things such as yard, school, and different types of counseling.  Thus, they contend it is not impossible to accommodate movement for their religious purposes.  They argue that the allowance of other types of movement also shows that there is baseless discrimination against them.  They also point out that other cellhouses at Menard that are also general population are afforded religious observance, but for

some reason, the East cellhouse is excluded.   They argue that the restriction on their religious exercise is not neutral.  They contend that if a staffing shortage is a problem, the number of people allowed to attend services could be limited.  Other than reducing the size of groups attending each service, they say Jumu'ah is essential, and cannot be accomplished in another satisfactory manner.   By contrast, for Taleem educational opportunities, they indicate that other religions (Christian and Catholic) have television channels within the prison, and they too could benefit from a channel in lieu of educational gatherings.  Plaintiffs provide much more detailed arguments on each of the four *Turner* factors as they pertain to Jumu'ah and Taleem, but it is not necessary to recite their arguments at length here to capture the essence of their complaint.

In addition to arguing that their religious observance has been impaired by the Defendants' conduct, the Plaintiffs also argue that the denial of their religious observance amounts to an Equal Protection violation because they are being treated differently than other religions.

Plaintiff French adds from his own personal experience as a long-time inmate at Menard, that he has lived in each of the other general population cellhouses and has been able to observe his religion in those cellhouses. (Doc. 1 at 39-40).  Plaintiff Ford contributes that he became aware on at least one occasion in October of 2023 that the North 2 cellhouse was allowed to attend Jumu'ah because he observed their Jumu'ah gathering while at the chapel for a legal call.  (Doc. 1 at 40).  Ford also states in an affidavit that when he was previously incarcerated at Hill Correctional Center, there were two religious channels for Al-Islam inmates.  (Doc. 1 at 146).  Plaintiff Craigen signed an

affidavit stating that he has experienced ongoing denials of Jumu'ah (with the exception of December 6, 2023), and he has not been allowed to attend Taleem, though if it was not cancelled he would have to choose between Taleem and law library.  (Doc. 1 at 63).  Ford and French also submitted numerous affidavits documenting their experiences attempting to seek access to Jumu'ah and Taleem, and Ford submitted a copy of a grievance about the same issue.  The Plaintiffs also included affidavits from others, and the prison's handbook.

The Plaintiffs attribute the problems they describe throughout the complaint to Defendants Anthony Wills (the Warden), Sterrett (the chaplain), Assistant Warden of Programs and Assistant Warden of Operations (both John Does).  However, they only describe corresponding with Defendants Wills and Sterrett about these issues, and do not have any allegations that make it clear what they believe the two John Doe assistant wardens personally did that hindered their ability to observe their religion.  At most, they allege that the Warden of Programs is liable either because he or she oversees the grievance process or the chaplaincy department.  (Doc. 1 at 37-38).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **First Amendment claim related to the denial of Jumu'ah and/or Taleem services against Defendants Sterrett and Wills in their individual capacities (or against Defendant Wills in his official capacity for any injunctive relief sought);**

**Claim 2:** **RLUIPA claim related to the denial of Jumu'ah and/or Taleem services against Defendant Wills in his official capacity;**

**Claim 3:**    **Equal Protection claim related to the denial of Jumu'ah and/or Taleem services for inmates in the East cellhouse against Defendants Sterrett and Wills;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

<u>**Preliminary Dismissals**</u>

The Plaintiffs named a "John Doe Food Supervisor" as a defendant in the caption of the case, but they did not include any factual allegations about this party in the factual narrative of the complaint.  Naming a person, without describing their role, is insufficient to state a claim, so this John Doe will be dismissed without prejudice for failure to state a claim.  *See e.g.*, Black v. Lane, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (naming a defendant in the caption is not sufficient to state a claim).

The Plaintiffs also named two John Doe assistant wardens—one of programs and one of operations.  Although they do name these two parties throughout the factual allegations, the naming of these two individuals is always done in conjunction with Defendants Wills and Sterrett in a shotgun fashion that does not attribute any particular personal actions or responsibility to the two John Does.  At most, they indicate that the Assistant Warden of Programs oversees the grievance and chaplaincy departments, but

they do not say anything about what this individual specifically does in this role.  By contrast, in the complaint and especially in the supporting affidavits, the Plaintiffs repeatedly emphasize that they tried to communicate with Wills and Sterrett via grievances and other written correspondence about their religious needs.  One key to establishing liability under § 1983 is to demonstrate the personal role of each named defendant.  *See e.g.*, *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (a defendant will be deemed to have sufficient personal responsibility if he or she directed the conduct causing the violation, or if it occurred with his or her knowledge or consent).  Because the complaint does not attribute any individual actions or knowledge to the two John Doe Assistant Wardens and never differentiates them from Wills or Sterrett, the Court finds the complaint insufficiently pled as to these two.  The John Doe assistant wardens shall be dismissed without prejudice.

## Analysis

The First Amendment prohibits prison officials from imposing a substantial burden on the free exercise of religion unless the burden is reasonably related to a legitimate penological interest.  *See Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013).  "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016).  "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests."  *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).  Thus, even a substantial burden is permitted if the burden is "reasonably related to legitimate

penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592−93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89−91 (1987)). "Courts consider four factors when evaluating a prison policy against a First Amendment claim: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy." *Larry v. Goldsmith*, 799 F. App'x 413, 415 (7th Cir. 2020); *see Turner*, 482 U.S. at 89−91 (outlining similar factors).

The Religious Land Use and Institutionalized Persons Act (RLUIPA) Act offers broader protections than the First Amendment. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on their religious exercise. See 42 U.S.C. § 2000cc-3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The relief available under RLUIPA is injunctive. *See Grayson*, 666 F.3d at 451. RLUIPA does not permit a cause of action against individual state employees in their personal capacity; it permits relief only against "governmental bodies that receive funds and accept the conditions attached by the statute." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). The proper defendant for a RLUIPA claim is a government official responsible for carrying out any injunctive relief that is deemed appropriate. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (noting that proper defendant in a claim for injunctive relief is the government official responsible for implementing injunctive relief).

At the same time, the Equal Protection Clause and the Establishment Clause prohibit the defendant from treating members of some religious faiths more favorably than others without a secular reason. *See Cruz v. Beto*, 405 U.S. 319, 322-23 (1972); *Nelson v. Miller*, 570 F.3d 868, 880-82 (7th Cir. 2009); *Kaufman v. McCaughtry*, 419 F.3d 678, 683-84 (7th Cir. 2005). "The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).

At this early juncture, the Plaintiffs allegations are sufficient to proceed under the First Amendment against Defendants Wills and Sterrett in their individual capacities for Claim 1. In the complaint, the Plaintiffs explain that both Jumu'ah and Taleem services are central to their ability to observe their religion, and they provide a discussion of the four *Turner* factors in relation to each service.

The allegations are also sufficient to proceed under RLUIPA on Claim 2 because the Plaintiffs seek injunctive relief. The Court finds that Defendant Anthony Wills is an appropriate party in his official capacity for the RLUIPA claim because, as Warden, he can reasonably be expected to implement injunctive relief related to this case.

Finally, Claim 3 alleging an equal protection violation is sufficient to proceed against both Wills and Sterrett in the individual capacities. The Plaintiffs allege that they are treated differently than other inmates in their housing unit with other religions, and that they are treated differently than other inmates that share their religion but live in other housing units. They argue there is no reason for this differential treatment, but that they are treated different because of their religion. As such, Claim 3 to proceed.

**Motions**

The Plaintiffs' motions to proceed *in forma pauperis* (Docs. 5, 6, 10, 11, 15, and 34) will be addressed separately. As the Court already noted in docket text entries, additional trust fund information is needed before the filing fees can be properly calculated.

Plaintiff Ayala's Motion to Proceed In Forma Pauperis (Doc. 22) will be **DENIED** as **MOOT** because he ultimately did not indicate a desire to proceed with this lawsuit after requesting a copy of the complaint to decide if he wished to proceed. As the Court advised in the earlier Order (Doc. 24) the non-response will be construed as a failure to prosecute, and Ayala will be dismissed without prejudice from this case. The Clerk of Court need not undertake further efforts to secure a fee from Ayala. He did not sign the original complaint and never returned a signed complaint.

Finally, Plaintiff Ford has moved to certify this case as a class action (Doc. 35), but the Court does not find it appropriate to allow a pro se litigant or a group of pro se litigants to act as legal representative of a class. *See e.g.*, *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (pro se litigants are generally not adequate class representatives); *see also Morton v. Olmstead*, 2024 WL 472533 at * 1 (N.D. Ind. Feb. 7, 2024) (it would be improper to allow a pro se litigant to risk the rights of other potential litigants). The Court finds that although the Plaintiffs have pled a sufficient complaint, it would still be inappropriate to allow them to proceed as legal representatives for others in this action. Thus, Ford's Motion (Doc. 35) will be **DENIED**.

**Disposition**

**IT IS HEREBY ORDERED THAT Claims 1-3** survive initial review against Defendants Anthony Wills and Chaplain Sterrett.   By contrast, all allegations against John Does 1-3 are insufficient as pled and the Clerk of Court is **DIRECTED** to **TERMINATE** John Does 1-3.

The Clerk of Court is **DIRECTED** to **TERMINATE** Plaintiff Nicholas Ayala because he did not inform the Court by the August 26, 2024, deadline that he wished to proceed in this joint-action, and he never filed a signed complaint.  His Motion to Proceed In Forma Pauperis (Doc. 22) is **DENIED**, and efforts need not be made to collect a fee.

The Clerk of Court is **DIRECTED** to prepare for Defendants Anthony Wills (individual and official (RLUIPA claims) capacity) and Chaplain Sterrett (individual capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against the Plaintiffs, and the judgment includes the payment of costs under Section 1915, the Plaintiffs will be required to pay the full amount of the costs, regardless of whether their applications to proceed in forma pauperis were granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiffs are **ADVISED** that they are under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate their whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

Plaintiff Ford's Motion to Proceed as a Class Action (Doc. 35) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 15, 2024

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.